UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| C.F. FOLKS, LTD., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-cv-1165 (TSC) |
| DC JEFFERSON BUILDING, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

This case involves a dispute between a tenant, Plaintiff C.F. Folks, Ltd., and its landlord, Defendant DC Jefferson Building, LLC. Plaintiff seeks declaratory and injunctive relief, arguing that Defendant's refusal to permit Plaintiff's patrons access to its building's third-floor restrooms after normal business hours is unreasonable, arbitrary, and violates the written and unwritten terms of the parties' leasing arrangement. ECF No. 1-1 (Compl.). Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 4-1 (Mot.). For the reasons explained below, the court will GRANT Defendant's motion to dismiss.

**I.   BACKGROUND**

Since May 1981, Plaintiff has owned and operated C.F. Folks Restaurant, a lunchtime restaurant/café contained within commercial property located at 1225 19th Street NW, Washington, D.C (the "Building"). Compl. ¶¶ 2, 4, 6. Over the years, C.F. Folks Restaurant has leased space in the Building from several different persons and entities. Compl. ¶ 5. Defendant

has owned the Building and served as Plaintiff's landlord since on or about January 8, 2009. Compl. ¶ 18.

The terms of the parties' leasing arrangement are contained in six documents: (1) the original lease agreement, dated June 18, 1990; (2) a First Amendment to the original lease agreement, dated October 31, 1999; (3) a Second Amendment to the original lease agreement, dated July 31, 2006; (4) a Third Amendment to the original lease agreement, dated February 2008; (5) a settlement agreement (the "Settlement Agreement"), dated February 2008; and (6) a Fourth Amendment to the original lease agreement, dated January 26, 2010. Compl. ¶ 19. Most relevant to this action, section 5 of the Settlement Agreement provides:

> Contingent upon C.F. Folks maintaining the garage level one restroom in a workable and sanitary manner in accordance with its obligations under the Lease, patrons of C.F. Folks may also use those restrooms on the third floor level of the Building.
>
> Such right to use the third floor restrooms is subject to Landlord's discretion and Landlord may revoke such right if: (1) such use interferes with other tenants in the building, or (2) C.F. Folks fails to maintain the garage level one restroom in accordance with the provisions outlined in paragraph 4 of this Settlement Agreement and the Lease. Landlord shall provide 60 days' notice of any revocation of C.F. Folks' right to use the third floor restrooms. In the event that Landlord revokes the right of C.F. Folks to use the third floor restrooms, such revocation of those rights shall not apply to any C.F. Folks' customer who, by reason of handicap or other physical disability, cannot use the garage level one restrooms.

Compl. Ex A at ¶ 5.

According to Plaintiff, section 5 of the Settlement Agreement memorialized its unwritten understanding with its prior landlords that, pursuant to the District of Columbia Building Code and the Americans with Disabilities Act ("ADA"), its patrons and employees are required to have access to two restrooms—at least one of which is ADA-compliant.[1] Compl. ¶¶ 6, 11, 13.

---

[1] Plaintiff alleges that two regulations require such restroom access: 12-A DCMR § 2902.1 and 28 CFR § 36.201(a). The first regulation is contained in the District of Columbia Building Code

2

Under the lease terms, Plaintiff has always had exclusive access to one of two single-occupancy restrooms located on the garage level (one level below C.F. Folks Restaurant) of the Building. Compl. ¶ 7. Neither of those restrooms are capable of becoming ADA-compliant. Compl. ¶¶ 7, 12. In the past, Plaintiff's patrons were permitted to use restrooms located on either the second or third floors of the Building. Compl. ¶ 10. Through the 2008 Settlement Agreement, Plaintiff's patrons were given, in writing, formal access to the Building's third-floor restrooms— at least one of which is ADA-compliant. Compl. ¶¶ 11, 13. Currently, Plaintiff's patrons—both those with and without disabilities—have unrestricted access to the garage-level and third-floor restrooms during normal business hours.[2] Compl. ¶ 20; Compl. Ex. C.

Since 2014, Plaintiff has sought to expand its restaurant's operating hours from strictly lunchtime hours to 6 a.m. to 11 p.m. on Sunday through Thursday, and 6 a.m. to 2 a.m. on Friday and Saturday. Compl. ¶ 21; Compl. Ex. D at 2. The restaurant also planned to begin serving alcoholic beverages during these expanded hours. Compl. Ex. D at 1–2. Finding section 5 of the Settlement Agreement ambiguous as to whether restaurant patrons were permitted to use the third-floor restrooms after normal business hours, ECF No. 7 (Opp.) at 9, Plaintiff expressly requested "after office hours" use of the third-floor restrooms. Compl. ¶ 22. In an August 1,

---

and provides that restaurants, banquet halls and food courts must have one water closet (i.e., toilet) per 75 males, one water closet per 75 females, and one lavatory per 200 persons. 12-A DCMR § 2902.1. The second regulation states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 CFR § 36.201(a).

[2] Neither party defines "normal business hours." Based on the parties' pleadings, it appears that "normal business hours" end at 5 p.m. *See* Mot. at 3 ("The Plaintiff has not leased space on the third floor, and the space is occupied by other tenants who do not normally open or operate after 5:00 p.m.").

3

2016 letter, Defendant agreed to Plaintiff's request, but only for those patrons who are unable to access the garage-level restroom due to a handicap and who are accompanied by a C.F. Folks Restaurant employee. Compl. Ex. C. In the letter, Defendant stated that "[t]he safety of the building's tenants is of paramount importance," and explained that permitting unrestricted after-hours access to the third-floor restrooms presented safety concerns, since the Building had no night security guard and Plaintiff's patrons may have consumed alcohol. Compl. Ex. C. Even after Plaintiff agreed not to serve alcoholic beverages, Compl. Ex. D at 2, Defendant maintained its position that use of the third-floor restrooms after normal business hours would be limited to those who are disabled and accompanied by a C.F. Folks employee, *see* Compl. Ex. E. Plaintiff alleges that as a result of Defendant's continued position regarding after-hours restroom access, Plaintiff has been unable to expand its restaurant's operating hours due to its fear of litigation relating to the District of Columbia's Building Code, the ADA, and personal injury claims. *See* Compl. ¶¶ 43, 47.

Plaintiff requests declaratory and injunctive relief to address Defendant's "unreasonable and arbitrary" position. Specifically, in Counts I and II of the Complaint, Plaintiff asks this court to declare (1) "Defendant's conduct to be in violation of the express terms of the parties' settlement agreement and in contradiction to the previously-described, well-understood custom between the parties," and that (2) "Defendant has unreasonably and arbitrarily exercised its contractual discretion to condition Plaintiff's use of the third floor bathrooms in a manner that has directly harmed Plaintiff's business interests within its restaurant/café." Compl. at 11, 13. Plaintiff also requests an injunction "restraining Defendant from taking any action [] designed to hinder or otherwise prevent Plaintiff from acting in compliance with the Americans with Disabilities Act and the District's building code." Compl. at 14.

4

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. The law presumes that "a cause lies outside [a federal court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Georgiades v. Martin–Trigona*, 729 F.2d 831, 833, n.4 (D.C. Cir. 1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."). In evaluating a motion to dismiss under Rule 12(b)(1), a court must assume the truth of all factual allegations and must review "'the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the [c]ourt accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). Finally, a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

### B. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move for dismissal on the grounds that the complaint has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Rollins v. Wackenhunt Servs., Inc.*, 703 F.3d 122, 129–130 (D.C. Cir. 2012).

### III. ANALYSIS

**A. <u>Counts I and II – Requests for Declaratory Judgments</u>**

Defendant argues that the court should dismiss Counts I and II for lack of subject matter jurisdiction because Plaintiff does not allege that Defendant is *currently* violating its obligations under the Settlement Agreement, and therefore no "actual controversy exists." Mot. at 7–10. Defendant further argues that Counts I and II should be dismissed for failure to state a claim upon which relief can be granted for two reasons. First, to the extent Counts I and II are based on an alleged "unwritten understanding" between the parties, this unwritten understanding is unenforceable, and thus cannot properly serve as the basis for Counts I and II. Mot. at 10–12. Second, "[e]ven if Plaintiff is alleging its patrons' use of the third floor restrooms was custom and practice between the parties," Counts I and II should nonetheless be dismissed because Plaintiff fails to support such an allegation in its Complaint. Mot. at 13. The court first addresses Defendant's jurisdictional argument.

The Declaratory Judgment Act permits courts to "declare the rights and other legal relations of any interested party seeking" a declaration "[i]n a case of actual controversy" within

6

their jurisdictions. 28 U.S.C. § 2201(a).[3] Moreover, Article III of the U.S. Constitution confers jurisdiction to federal courts to adjudicate "Cases" or "Controversies." U.S. Const. art. III, § 2. The Article III case-or-controversy requirement "is no less strict when a party is seeking a declaratory judgment than for any other relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995) (citing *Altvater v. Freeman*, 319 U.S. 359, 363 (1943)). To establish that a matter is a "controversy" within the meaning of the Declaratory Judgment Act and Article III of the Constitution, a party "must 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hoffman v. Dist. of Columbia*, 643 F. Supp. 2d 132, 140 (D.D.C. 2009) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Fed. Express Corp.*, 67 F.3d at 964 (quoting *Md. Cas. Co.*, 312 U.S. at 273).

Plaintiff requests two declaratory judgments. In Count I, Plaintiff requests a declaration that, in limiting Plaintiff's patrons' use of the third-floor restrooms after normal business hours, Defendant is in violation of the Settlement Agreement and the "well-understood custom between the parties." Compl. at 11. In Count II, Plaintiff requests a declaration that "Defendant has unreasonably and arbitrarily exercised its contractual discretion to condition Plaintiff's use of the third floor bathrooms in a manner" that has harmed Plaintiff's business interests. Compl. at 13. In both Counts, Plaintiff asks the court to address conduct that has yet to occur; Defendant has not yet exercised its contractual discretion to limit or condition Plaintiff's use of the third-floor bathrooms. *See* Compl. ¶ 20, *see also* Compl. Ex. C. Indeed, the event that would trigger

---

[3] This case was initially filed in the Superior Court for the District of Columbia. Under Rule 57 of the Superior Court Rules of Civil Procedure, the Declaratory Judgment Act, 28 U.S.C. § 2201, applies to declaratory relief claims filed in D.C. Superior Court as well. *See* Super. Ct. Civ. R. 57 ("These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201 or otherwise.").

7

Defendant's engagement in such conduct—Plaintiff's expansion of its restaurant's business hours—has not yet occurred.

Typically, a declaratory judgment claim based on the occurrence of a future or contingent event is not sufficiently immediate or real to be justiciable. *Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 670 F. Supp. 424, 429 (D.D.C. 1987) ("There is no doubt that the existence of a contingency will, in many cases, be indicative of the fact that no justiciable controversy exists."); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (finding that a declaratory judgment claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks and citations omitted). However, if there is a "practical likelihood" that the future or contingent event will occur, a declaratory judgment claim may nonetheless present a justiciable controversy. *Bazarian Intern. Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 129 (D.D.C. 2011) (citing *Nat'l R.R. Passenger Corp.*, 670 F. Supp. at 429–30; *Am. Exp. Bank Ltd. v. Banco Espanol de Credito, S.A.*, 597 F. Supp. 2d 394, 405 (S.D.N.Y. 2009)).

In this case, Defendant's alleged violations of the Settlement Agreement, the parties' customs and practices, and its obligation to reasonably exercise its contractual discretion all hinge on the occurrence of a future event: Plaintiff's expansion of its restaurant's business hours. Based on the record currently before the court, there is no practical likelihood that this future event is imminent.

In its Complaint, Plaintiff indicates that it "has desired to expand its restaurant business" since at least 2014. Compl. ¶ 21. However, there is nothing in the record demonstrating that such an expansion is practical, let alone imminent. The expansion from a strictly lunchtime enterprise to one serving breakfast, lunch, and dinner is likely to require a significant amount of

8

time, resources, and planning. Yet the record is devoid of any mention of steps Plaintiff has taken between 2014—when Plaintiff initially desired to expand its business—and 2017—when Plaintiff filed its Complaint—to effectuate the expansion. Plaintiff has not alleged, for example, that it has begun to expand its menu, hired additional employees, or solicited additional funds to support its desired expansion. Instead, Plaintiff asks the court to infer, from its willingness to incur litigation costs "in obtaining certainty about the extent and scope of its patrons' right to access [the] third floor bathrooms," "the seriousness of Plaintiff's desire to expand its hours of operation." Opp. at 11–12. But a restaurant's successful expansion requires more than its patrons' access to ADA-compliant restrooms, and Plaintiff's willingness to litigate does not suffice to demonstrate a practical expansion plan. Thus, while Plaintiff argues that it has not yet expanded its business solely because of Defendant's alleged "arbitrary and capricious conduct in exercising its discretion" with respect to the third-floor restrooms, *see* Compl. ¶ 43, the record—or lack thereof—suggests otherwise. Accordingly, the court finds that Plaintiff has not shown a practical likelihood that it will expand its restaurant's business hours in the near future, and therefore Defendant's alleged future misconduct is not of "sufficient immediacy and reality" to warrant a declaratory judgment at this time.

Plaintiff's arguments do not convince this court otherwise. Plaintiff first argues that Defendant's impending restriction on Plaintiff's access to the third-floor restrooms after normal business hours qualifies as an anticipatory breach of the parties' leasing arrangement, and demonstrates the existence of an actual controversy. Opp. at 10–12. However, Plaintiff does not expressly allege an anticipatory breach in its Complaint, and even if it did, the alleged "anticipatory breach"—Defendant's refusal to permit Plaintiff's patrons access to the third-floor restrooms—is not sufficiently "immediate" or "real" to warrant a declaratory judgment. Plaintiff

9

next argues that it "stands to suffer several important harms should this court not intervene and enter a declaratory judgment." Opp. at 13–15. However, the alleged harms—a violation of the District of Columbia's Building Code, a violation of Plaintiff's right to quiet enjoyment of the leased premises, and the threat of civil litigation from disabled patrons—are all speculative at this point, and are contingent upon Plaintiff expanding its hours, Defendant refusing access to the third-floor restrooms for certain patrons, and an actual threat of litigation arising out of Defendant's restrictions. These are not current harms that require immediate attention or an immediate judgment, and this court therefore cannot issue a declaration addressing them on the basis of the record before it.[4] *See Hoffman*, 643 F. Supp. 2d at 140.

In sum, the court concludes that it lacks subject matter jurisdiction to adjudicate Counts I and II because they do not present a "substantial controversy . . . of sufficient immediacy and reality," as required under the Declaratory Judgment Act and Article III of the Constitution. Therefore, Counts I and II will be dismissed without prejudice to Plaintiff's ability to file a new complaint, if and when future circumstances dictate.

---

[4] Plaintiff also argues that an "actual controversy" exists because "any judgment and final order . . . will undoubtedly clarify the extent and scope of its rights to use" the third-floor restrooms. Opp. at 12. But this argument has no bearing on the court's determination as to whether an "actual controversy" exists, and appears to derive from Plaintiff's misunderstanding of the appropriate legal standard. Plaintiff incorrectly asserts that when deciding whether an actual controversy exists, the court must determine: "(1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." Opp. at 8-9 (citing *Gibson v. Liberty Mut. Group, Inc.*, 778 F. Supp. 2d 75, 78 (D.D.C. 2011); *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 597 (2d Cir. 1996)). However, this is the test for whether the court should exercise its discretion to grant declaratory relief *after* plaintiff has met its initial burden of demonstrating that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Gibson*, 778 F. Supp. 2d at 78 (citation omitted).

Having found that the court lacks subject matter jurisdiction to consider Counts I and II, the court need not address Defendant's Rule 12(b)(6) arguments for dismissal.

**B. Count III – Request for Injunctive Relief**

In Count III, Plaintiff requests an injunction "restraining Defendant from taking any action [] designed to hinder or otherwise prevent Plaintiff from acting in compliance with the Americans with Disabilities Act and the District's building code." Compl. at 14. Injunctive relief, however, "'is not a freestanding cause of action, but rather . . . a form of relief to redress'" a plaintiff's other claims. *Johnson v. Mao*, 174 F. Supp. 3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015)). Plaintiff concedes that bringing a claim for injunctive relief as a stand-alone right of action "may be somewhat unusual," Opp. at 21, but nonetheless argues that it is proper to do so here. However, all of the cases on which Plaintiff relies involved requests for injunctive relief based on statutory or common-law causes of action. *See Tucci v. Dist. of Columbia*, 956 A.2d 684, 690 (D.C. 2008) (request based on claim under Litter Control Administration Act); *Milton Props., Inc. v. Newby*, 456 A.2d 349, 351 (D.C. 1983) (tenant "sought injunctive relief against alleged ongoing violations of the housing regulations"); *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 (D.C. 1982) ("B & W based its claim for injunctive relief on D.C. Code 1973, § 5–422"); *Bennett v. Bennett*, 682 F.2d 1039, 1041 (D.C. Cir. 1982) (request based on breach of custody decree).

Here, as Defendant notes, Plaintiff does not allege that "Defendant has breached a contract, breached a statute, or acted tortiously." ECF No. 9 (Reply) at 20. Instead, Plaintiff makes the blanket assertion that Defendant's "inconsistent, unreasonable, and arbitrary positions" have placed it "within an uncomfortable circumstance" where it must choose between possibly being sued by Defendant and possibly being sued by a patron. Compl. at 13–14. This

11

blanket assertion does not state a cause of action on which to base injunctive relief. Therefore, the court will dismiss Count III for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be GRANTED. Plaintiff's Complaint will be dismissed without prejudice.

A corresponding order will issue separately.

Date: March 31, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge